IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02978-RBJ-CBS

NICKY SMITH,

        Plaintiff,

v.

MICHELL RUSSOM,
SGT. NELSON, and
JOSEPH HALLIGAN (*UNNAMED STAFF
COMMANDER ON DUTY 10:00 PM 10/26/12*),

        Defendants.

---

RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS

---

Magistrate Judge Shaffer

This matter comes before the court on Defendants Michelle Russom, Aaron Nelson, and Joseph Halligan's[1] (collectively "Defendants") Motion to Dismiss (doc. #28), filed on May 5, 2014. This motion was referred to the Magistrate Judge pursuant to the Order of Reference dated January 23, 2014 (doc. #11) and Memorandum dated May 6, 2014 (doc. #29). This court has carefully considered the motion and related briefing, the entire case file, the comments offered by the parties during the June 3, 2014 Status Conference and September 23, 2014 Motion Hearing, and applicable case law. For the following reasons, I recommend that the Motion to Dismiss be granted in part and denied in part.

---

[1] Defendant Halligan was identified as the "Unnamed Staff Commander on Duty 10:00 PM 10/26/12" after Plaintiff filed his Amended Complaint.

1

## BACKGROUND

Mr. Smith, a *pro se* prisoner incarcerated at the Arkansas Valley Correctional Facility ("AVCF") in Ordway, Colorado, filed this lawsuit pursuant to 42 U.S.C. § 1983 claiming violations of his Eighth Amendment right against cruel and unusual punishment, Fourteenth Amendment right to privacy and due process, and First Amendment right to access the courts and against retaliatory conduct. Plaintiff seeks $7.5 million in compensatory and punitive damages.

On August 10, 2012, while in the custody of Buena Vista Correctional Complex, Plaintiff voluntarily attended a mental health session with Defendant Russom, a state-sponsored interviewer. Plaintiff and Russom signed a confidentiality agreement pertaining to the session. Plaintiff alleges Russom falsely accused him of sexually harassing her during that session, and in the context of her accusation disclosed personal information to a hearings officer regarding Plaintiff's sexual habits and fantasies. Plaintiff was convicted of sexual harassment. He claims that as a result he was classified as a sex offender, thus compromising his health and safety, and his sentence was extended.

Plaintiff submitted a Step 2 grievance to his case manager on October 26, 2012 regarding Defendant Russom's accusation and disclosure. The grievance stated in relevant part: "That's why police get killed at AVCF, if an inmate can't address his mental health issues in a professional clinical setting without being subject to punishments for his thoughts you are building many potential powder kegs." (Doc. #28-1).[2] Plaintiff alleges that Defendant Nelson retrieved the grievance from the mail system and read it, restrained Plaintiff in handcuffs, and

---

[2] This court may consider documents referred to in the Amended Complaint or that are subject to judicial notice without converting a motion to dismiss to a Rule 56 motion. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

presented him to Defendant Halligan, the shift commander, at 10:45 p.m. on the night of October 26. Plaintiff claims Nelson and Halligan accused him of a Code of Penal Discipline ("COPD") violation for "advocating a facility disruption by submitting a grievance," placed him in punitive segregation for eighteen days[3], and that he lost twenty earned days of "Good Time." (Doc. #8 at p. 7, doc. #31 at p. 2). The COPD charge and disciplinary report were later expunged. (Doc. #8 at p. 11).

Plaintiff filed his Complaint on October 30, 2013 (doc. #1) along with a Statement of Account Activity (doc. #3). On October 31, 2013, Magistrate Judge Boland ordered Plaintiff to cure the deficiencies in the Statement of Account Activity by filing the court-approved Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (doc. #4). Plaintiff filed a § 1915 motion and corresponding affidavit on November 20, 2013 (doc. #5). On November 21, 2013, Judge Boland granted Plaintiff's § 1915 motion and denied his Statement of Account Activity (doc. #6). On December 2, 2013, the court ordered Plaintiff to file an amended complaint that complied with Fed. R. Civ. P. 8. (Doc. #7). Plaintiff filed an Amended Complaint on December 30, 2013 (doc. #8) stating three claims for relief. On September 6, 2013, the court dismissed Plaintiff's first claim as legally frivolous, and dismissed Defendants Werth and Miashiaria (doc. #9).

Defendants Russom and Nelson waived service on February 3, 2014 (doc. #13). Joseph Halligan, who is no longer a DOC employee, was identified as the Unnamed Shift Commander; he was personally served on February 5, 2014 (doc. #19). On March 10, 2014, Defendant Halligan requested an extension of time to respond to the Amended Complaint (doc. #20), which this court granted on March 11, 2014 (doc. #22). Defendants moved for an extension of time to

---

[3] Plaintiff states in his Amended Complaint that he "did two weeks in the hole for submitting a Step II Grievance" (doc. #8 at p. 11), and in his Response to Defendants' Motion to Dismiss that he spent eighteen days in punitive segregation. (Doc. #31 at p. 2).

3

answer or otherwise respond to the Amended Complaint on April 1, 2014 (doc. #23), which this court granted on April 2, 2014 (doc. #25). On May 2, 2014, Defendants filed a Motion for Leave to File Excess Pages regarding their Motion to Dismiss (doc. #26), which District Judge Babcock denied on May 5, 2014 (doc. #27). Defendants filed their Motion to Dismiss the Amended Complaint the same day (doc. #28). Plaintiff filed his Response to Defendants' Motion to Dismiss on May 28, 2014 (doc. #31).

On June 3, 2014, Defendants moved to stay discovery pending the resolution of their Motion to Dismiss (doc. #32). This court held a Status Conference on June 3, 2014, at which the undersigned granted Defendants' Motion to Stay (doc. #33). Defendants filed a Reply in support of their Motion to Dismiss on June 16, 2014 (doc. #35), and this court subsequently scheduled a Motion Hearing to be held August 25, 2014 (doc. #36). On June 26, 2014, Plaintiff moved for appointment of counsel (doc. #40), which this court denied on July 11, 2014 (doc. #42). The Motion Hearing was ultimately held on September 23, 2014, at which the undersigned gave the parties leave to submit by October 3, 2014 supplemental information addressing the protection of privacy afforded by the Fourteenth Amendment and continued the stay on discovery pending the outcome of Defendants' Motion to Dismiss (doc. # 45). Defendants filed a supplemental brief on October 2, 2014 (doc. # 46), and Plaintiff filed a supplemental brief on October 7, 2014 (doc. #47).

## STANDARD OF REVIEW

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction.

The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex. U.S. Army, Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Smith is appearing *pro se*, the court "review[s] [his] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).

However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted). Furthermore, the court may, at any time and of its own accord, dismiss any action that is frivolous or which fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 12(b)(6); *Hall v. Bellmon*, 935 F.2d 1106, 1108-10 (10th Cir. 1991).

## ANALYSIS

Title 42 U.S.C. § 1983 allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). Mr. Smith claims that Defendant Russom violated his Fourteenth Amendment right to privacy and his Eighth Amendment right against cruel and unusual punishment by disclosing confidential information. Plaintiff claims that Defendants Nelson and Halligan likewise violated his Eighth Amendment right against cruel and unusual punishment, and restricted his access to the courts and retaliated against him in violation of the First Amendment.

### A.     Eleventh Amendment Immunity and Qualified Immunity

Plaintiff is suing Defendants in their individual and official capacities. (*See* Doc. #31). In their official capacity, Defendants are immune from claims for monetary damages and retroactive equitable relief. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing

*Brandon v. Holt*, 469 U.S. 464, 471–72, (1985)).  The Eleventh Amendment bars suits against a state by its own citizens, and immunizes state defendants sued in their official capacities from liability for damages or equitable relief.  *See Johns v. Stuart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Furthermore, state employees acting in their official capacities are not "persons" subject to suit under § 1983.  *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994).  Accordingly, Plaintiff cannot pursue a § 1983 claim for monetary damages against Defendants sued in their official capacity.

Defendants argue they are entitled to qualified immunity in their individual capacity.  The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted).  Qualified immunity is an affirmative defense to section 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).  Defendants argue that Plaintiff has not satisfied even the first prong of the inquiry.  For reasons addressed below, this court agrees as to Defendant Russom and reserves a finding on qualified immunity as to Defendants Nelson and Halligan.

B.     **Constitutional Claims**

    1.     Eighth Amendment Claims

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citation omitted). "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citation omitted). The Eighth Amendment also prohibits "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Prison officials may be liable for an Eighth Amendment violation for "indifference…manifested…in their response to the prisoner's needs or by…intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014).

"The test for constitutional liability of prison officials involves both an objective and a subjective component." *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations and citation omitted). First, the prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, under the subjective component, the prisoner must establish deliberate indifference to his serious needs by "present[ing] evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751. The subjective standard requires a state of mind "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting

*Farmer*, 511 U.S. at 837) (internal quotations and further citation omitted). The plaintiff must also allege that defendants personally participated in the Eighth Amendment violation. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citing *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976)).

Mr. Smith claims he suffered a serious deprivation when he was falsely accused and convicted of sexual harassment and subsequently labeled a sex offender because the conviction resulted in a lengthier prison sentence and the classification put his safety at risk. Plaintiff's allegations do not support an Eighth Amendment deprivation claim for a multitude of reasons. First, Plaintiff's conviction has not been overturned. To recover damages for harm caused by actions "whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *See also Edwards v. Balisok*, 520 U.S. 641 (1997). Plaintiff cannot use this action to collaterally attack the COPD conviction.

Even if the conviction had been reversed, Plaintiff has not alleged personal participation on the part of Russom. A cognizable § 1983 claim requires "a plaintiff [to] plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). *See also Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). Russom did not personally convict Plaintiff, classify him as a sex offender, or extend his sentence. Moreover, the individuals responsible for convicting Plaintiff are not identified in the Amended Complaint, and Plaintiff does not allege that they acted with deliberate indifference in seeking to classify Plaintiff and extend his sentence. Finally,

Plaintiff is precluded from seeking relief under § 1983 to the extent he has an available remedy in state tort law. *Cf. Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992) ("Because the Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law") (internal quotation marks and citation omitted). *See also Graves v. Thomas*, 450 F.3d 1215, 1220-21 (10th Cir. 2006) (noting the concern that § 1983 not replace state tort law).

Plaintiff further claims that Defendants Nelson and Halligan violated his Eighth Amendment right against cruel and unusual punishment when they intercepted his Step 2 grievance and reported Plaintiff for advocating a facility disruption, which resulted in Plaintiff spending eighteen days in punitive segregation and losing earned time credits. The charge disciplinary report were later expunged. These allegations do not establish a constitutional violation because disciplinary segregation does not constitute a significant deprivation. *See Sandin v. Connor*, 515 U.S. 472, 484-85 (1995) ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.") *See also Abbott v. McOtter*, 13 F.3d 1439, 1441 (10th Cir. 1994) ("The warden can impose restrictive conditions of confinement upon plaintiff without violating the Eighth Amendment, as long as those conditions do not involve the wanton and unnecessary infliction of pain or are not grossly disproportionate to the severity of the crime warranting imprisonment.") (internal quotation marks and citations omitted). Accordingly, Plaintiff has not stated an Eighth Amendment claim.

2.  Fourteenth Amendment Claims

The due process clause of the Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIC, § 1. Substantive due process protects against the arbitrary deprivation of these rights, regardless of the procedures applied; procedural due process guarantees that deprivation will not occur unless fair procedures are followed in making the decision. *See Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991). In considering a procedural due process claim, the court must determine whether the plaintiff has a protected interest and then whether he or she was afforded an appropriate level of process. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citing *Watson v. University of Utah Med. Ctr.,* 75 F.3d 569, 577 (10th Cir. 1996)).

a.  Right to Privacy

Plaintiff claims Defendant Russom violated his Fourteenth Amendment right to privacy when she disclosed personal information about him.[4] "The constitutional right to privacy includes an 'individual interest in avoiding disclosure of personal matters....'" *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). The Tenth Circuit relied on *Whalen* in holding that "[d]ue process thus implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state." *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986). The right to privacy rests on whether a person has "a legitimate expectation … that [the information] will remain confidential while in the state's possession." *Id.* Whether the expectation is legitimate depends in part "upon the

---

[4] At times Plaintiff asserts his invasion of privacy claim as an unlawful search in violation of his Fourth Amendment rights. The Fourth Amendment prohibits unreasonable searches and seizures. *U.S. v. Gordon*, 741 F.3d 64, 69 (10th Cir. 2014). Though there is certainly juxtaposition between the Fourth and Fourteenth Amendments (*see, e.g., Kerns v. Bader*, 663 F.3d 1173, 1184 (10th Cir. 2011)), neither search nor seizure is herein at issue. Plaintiff's right to privacy claim is firmly grounded in the Fourteenth Amendment.

intimate or otherwise personal nature of the material the state possesses." *Sheets v. Salt Lake County,* 45 F.3d 1383, 1387 (10th Cir. 1995) (quoting *Mangels*, 789 F.2d at 839). Protection afforded by the right of privacy is not absolute. A legitimate disclosure must "advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner." *Anderson*, 469 F.3d at 914 (quoting *Mangels*, 789 F.2d at 839) (internal citation omitted). The court must first determine whether the information at issue is protected by the right to privacy; and then whether the state can establish a compelling interest for disclosure and that disclosure was accomplished using the least intrusive means available. *Sheets,* 45 F.3d at 1387.

Plaintiff arguably possesses a constitutionally protected privacy interest in the sexual predilections that Defendant Russom attributed to him.[5] *See Eastwood v. Department of Corrections,* 846 F.2d 627, 631 (10th Cir. 1988) (privacy interest triggered when "an individual is forced to disclose information regarding personal sexual matters."); *Bloch v. Ribar,* 156 F.3d 673, 685 (6th Cir. 1998) ("Our sexuality and choices about sex … are interests of an intimate nature which define significant portions of our personhood. Publically revealing information regarding these interests exposes an aspect of our lives that we regard as highly personal and private."). *See also United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577 (3d Cir. 1980) ("Information about one's body and state of health is a matter which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life."); *but see Seaton v. Mayberg*, 610 F.3d 530, 534-35 (9th Cir. 2010) ("Loss of privacy is an inherent incident of confinement … prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them."). However, Russom disclosed the personal information in the context of reporting

---

[5] Plaintiff alleges that Russom referenced him as engaging in "excessive masturbation," (doc. #8 at p. 6), and falsely reported that he professed an interest in "equine bestiality." (Doc. #31 at p. 9).

12

Plaintiff for sexual harassment. This divulgence suffices as a "compelling state interest." To find otherwise would suggest that state employees run the risk of violating prisoners' constitutional rights when they report what they perceive as offensive or harassing behavior. Indeed, some conduct does not enjoy the right to privacy protection. *Cf. Mangels*, 789 F.2d at 839 ("[t]he possession of contraband drugs does not implicate any aspect of personal identity which, under prevailing precedent is entitled to constitutional protection."). It stands to reason that an individual compromises his right to privacy if when divulging intimate and personal information he also subjects the listener to lewd and obscene gestures. Russom also limited her disclosure to one person, whom Plaintiff identified in oral argument as the CDOC hearing officer. This demonstrates that the disclosure was limited to the specific purpose of Russom substantiating her accusation.

      b.    Liberty Interest

Plaintiff also claims he has a liberty interest in not being labeled a sex offender and that Russom's accusations subjected him to an atypical hardship in the form of a longer prison sentence. "To invoke the protections of procedural due process, a plaintiff must establish the existence of a recognized property or liberty interest." *Setliff v. Mem'l Hosp. of Sheridan Cnty.*, 850 F.2d 1384, 1394 (10th Cir. 1988). The Supreme Court has held that "prison conditions that 'impose [] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' may create a liberty interest protected by the Due Process Clause." *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (quoting *Sandin*, 515 U.S. at 484). "Changing an inmate's prison classification ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Templeman v. Gunter,* 16 F.3d 367, 369 (10th Cir. 1994). However, an inmate may have a liberty interest in his initial classification as a sex offender

13

because of the stigma attached to the label. *See Hubler v. Lander*, 413 Fed. Appx. 81, 82 (10th Cir. 2011) (citing *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242–43 (10th Cir. 2000). *See also Neal v. Shimoda,* 131 F.3d 818, 829 (9th Cir. 1997) (stating that that "[t]he classification of an inmate as a sex offender is precisely the type of atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life that the Supreme Court held created a protected liberty interest.") (internal quotation marks and citation omitted). The *Neal* court concluded that the stigmatizing label of "sex offender" combined with requiring completion of specialized treatment as a condition to parole eligibility creates the type of liberty deprivations that necessitate procedural due process. *Neal*, 131 F.3d at 830. An inmate whose classification as a sex offender implicates a liberty interest is entitled to the following protections: "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004).

Mr. Smith claims that his sexual harassment conviction resulted in a sex offender designation and a longer sentence. He does not allege whether he was provided the procedural safeguards listed in *Gwinn*. However, this court need not wrestle to conclusion the question of whether Plaintiff has identified a property interest or alleged violations of procedural due process because *Heck* is clearly applicable. Plaintiff's conviction has not been overturned. A claim for damages for a constitutional violation that would "necessarily imply the invalidity of [the prisoner's] conviction or sentence" is not cognizable under § 1983 if the conviction or sentence stands. *See Heck*, 512 U.S. at 487. As with his Eighth Amendment claim for cruel and unusual punishment resulting from the sex offender classification, Plaintiff cannot seek damages for the violation of a liberty interest where that claim would invalidate a conviction.

14

3.     First Amendment Claims

a.     Access to Courts

Mr. Smith claims that Defendants Nelson and Halligan restricted his access to court in violation of the First Amendment when they intercepted his Step 2 grievance. The First Amendment guarantees any person the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. *See also Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (the right of access to courts is grounded in the First Amendment). To state a violation of this right, Plaintiff must demonstrate an actual injury that "hindered his efforts to pursue a legal claim." *Davis v. Arkansas Valley Corr. Facility,* 99 Fed. Appx. 838, 842-43 (10th Cir. 2004) (internal citation omitted). "The injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354-56 (1996) (the touchstone of the right to access the court is a prisoner's "reasonably adequate opportunity to file nonfrivolous legal claims challenging [] convictions or conditions of confinement.").

Plaintiff's grievance pertained to the incident with Defendant Russom. Confiscation of the grievance prevented Plaintiff from pursuing his dispute because the Prison Litigation Reform Act mandates a strict sequential order. *See* 42 U.S.C. § 1997e(a). His Step 3 grievance was denied without a Step 2 grievance on record and he was thereafter unable to exhaust the available administrative remedies. (Doc. #31 at p. 12). However, Plaintiff concedes that while Nelson and Halligan "stymied, hindered, and interfered" with his ability to file a claim, they did not "stop [him]" from proceeding with this lawsuit. (Doc. #31 at p. 13). Moreover, this court finds that Plaintiff cannot state an Eighth or Fourteenth Amendment claim as to Russom because his harassment conviction has not been overturned and Russom's disclosure qualifies as a

compelling state interest that utilized the least intrusive means. Accordingly, Plaintiff has not stated a claim that his access to the courts has been restricted.

### b. Retaliation

Plaintiff also claims that Nelson and Halligan accused Plaintiff of advocating a facility disruption in retaliation of him filing the grievance. "[Prison] officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights…even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). A retaliation claim requires a plaintiff to show that "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic,* 582 F.3d 1155, 1165 (10th Cir. 2009). "[P]laintiff must prove that but for the retaliatory motive, the incidents to which he refers…would not have taken place." *Peterson*, 149 F.3d at 1144.

A prisoner's right to file a grievance is protected by the First Amendment. *See, e.g., Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996). Plaintiff alleges that Nelson and Halligan reported him for advocating a facility disruption for no reason other than he wrote the grievance, and that as a result he was removed from general population and lost earned time and good time. *See* Doc. #31 at p. 10. The Associate Warden at Buena Vista Correctional Complex later expunged the charge and disciplinary report from Plaintiff's record and restored his credits for good behavior. (*See* Doc. #31 at p. 2).

Defendants argue that Plaintiff was not engaged in protected activity because his grievance contained threatening language. (*See* Doc. #28 at p. 13) (citing *Cowens v. Warren*,

16

150 F.3d 910 (8th Cir. 1998)). Defendants further argue that they acted with the legitimate penological interest of "preserv[ing] institutional order and discipline." *Id.* at p. 14.

Retaliation is often difficult to establish by direct evidence because it implicates defendants' state of mind. *See Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990) (citing *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979), where the First Circuit accepted allegations that a plaintiff was transferred to a different prison after filing a lawsuit as circumstantial evidence of retaliation). "While it may be possible in some cases to support such an ultimate fact [of retaliation] with clear evidence which can be averred in the complaint, we cannot presume this will often be the case." *Maschner*, 899 F.2d at 949 (internal quotation marks and citations omitted). Here, Plaintiff alleges that Nelson retrieved and read his grievance and immediately handcuffed Plaintiff and, along with Halligan, removed him to punitive segregation. I find that Plaintiff's allegations suffice to survive a Rule 12(b)(6) challenge. The question of whether the language in Plaintiff's grievance constitutes a threat or abuse so as to remove it from First Amendment protection is better addressed on a motion for summary judgment, as is whether Nelson and Halligan's actions were justified as pursuing a constitutional objective.

**C.     Monetary Damages**

To the extent Plaintiff seeks $7.5 million against Defendants in compensatory and punitive damages he has not alleged that he sustained a physical injury resulting from constitutional violations. The Prison Litigation Reform Act bars a prisoner from recovering compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(a) and (e). *See also Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (citing *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir. 1999)).

17

The Amended Complaint contains no allegations that demonstrate or suggest that Plaintiff suffered physical injuries attributable to Defendants' conduct.

Though this omission precludes Plaintiff from recovering compensatory damages, he may nevertheless pursue nominal or punitive damages should he prevail on the merits. *See Lewis v. Clark*, 577 Fed. Appx. 786, 802 (10th Cir. 2014). *See also Searles*, 251 F.3d at 879 (10th Cir. 2001) (holding § 1997e(e) does not bar nominal or punitive damages in the absence of injury). In light of this court's recommendation that Plaintiff's First Amendment claim for retaliation is better addressed on motion for summary judgment, I reserve a finding on Plaintiff's request for punitive damages for a later time.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendants' Motion to Dismiss (doc. #28) be GRANTED in part and DENIED in part, thereby dismissing Plaintiff's Second Claim and Defendant Russom, and Plaintiff's Third Claim as it pertains to his First Amendment right to access the courts.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 4th day of November, 2014.

                BY THE COURT:

                s/Craig B. Shaffer_____
                United States Magistrate Judge